UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TIMOTHY ALFORD,**<br>    **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **No. 11-92** |
| **NOBLE DRILLING (U.S.), LLC, et al.,**<br>    **Defendants** | **SECTION "E"** |

ORDER AND REASONS

Before the Court is plaintiff Timothy Alford's ("Alford") Motion and Memorandum in Support Thereof to Exclude/Strike Certain Testimony of Mr. Paul Liberato.[1]  For the reasons set forth below, the Motion is granted in part and denied in part.

BACKGROUND

Alford filed this personal injury lawsuit against defendants Noble Drilling (U.S.), LLC, ("Noble Drilling") and Muchowich Offshore Oil Services, Inc. ("Offshore Oil Services") pursuant to the Jones Act, 46 U.S.C. § 30104, et seq., and General Maritime law.  Alford was employed by Noble Drilling as a Jones Act seaman aboard the PAUL ROMANO.  Alford alleges that he suffered severe and permanent injury to his knee during a personnel basket move from the PAUL ROMANO to a vessel owned by Offshore Oil Servics.

Alford now seeks to limit the testimony of defendants' "liability expert" Paul Liberato ("Liberato").  Alford's motion seeks an Order from this Court excluding Liberato from testifying with respect to certain conclusions contained in his report.[2]  Specifically, Alford seeks to exclude Liberato from testifying about: (1) his past experiences riding in personnel

---

[1] R. Doc. 116.

[2] *See* R. Doc. 116-1 (Liberato's Expert Report).

1

baskets; (2) his opinion that "[w]hen a personnel transfer has something go wrong, it is obvious to all on board the transfer device;" (3) his opinion that "if nothing was done wrong by the crew of the rig or the boat then something else must have caused Mr. Alford to fall (or step off) the basket;" (4) his opinion that "if riders fell off a basket every time a basket was turned or stopped a few feet over the deck, there would be accidents literally every day during offshore transfers;" (5) his opinion that there are "exceptionally few injuries during offshore crane transfers in the Gulf of Mexico" and that offshore crane transfers are an "extremely safe method of getting personnel on and offshore installations;" (6) a Johns Hopkins study containing a total number of helicopter crashes and helicopter crash-related deaths in the Gulf of Mexico from 1983 to 2009; and (7) his opinion about this Johns Hopkins study as it pertains to this case.[3]  Alford also seeks to limit or exclude some or all of Liberato's testimony on the grounds that he is biased.

## ANALYSIS

The Federal Rules of Evidence govern Alford's motion to exclude or limit the testimony of Liberato. *See Mathis v. Exxon Corp.*, 302 F.3d 448, 459 (5th Cir. 2002). Rule 702 provides:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  This rule applies not only to testimony based on scientific knowledge,

---

[3] *Id.*

but also to testimony of engineers and other experts that is based on technical or specialized knowledge. *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999)). This rule requires the trial court to act as a "gatekeeper," tasked with making a preliminary assessment to determine whether the expert testimony is both reliable and relevant. *See Pipitone*, 288 F.3d at 243-244 (citing *Daubert v. Merrell Dow Pharm.*, Inc., 509 U.S. 579, 592-93 (1993)). The burden is on the proponent to prove by a preponderance of the evidence that its expert satisfies the Rule 702 test. *Mathis*, 302 F.3d at 459-60.

"Reliability is determined by assessing whether the reasoning or methodology underlying the testimony is scientifically valid." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir.2007). In a recent Jones Act personal injury case, Judge Fallon explained the factors a Court should take into account when considering the reliability of an expert's testimony:

> A number of nonexclusive factors may be relevant to the reliability analysis, including: (1) whether the technique at issue has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community.

*Naquin v. Elevating Boats,* LLC, 2012 WL 1664257, at *4 (E.D. La. 2012) (citing *Burleson v. Tex Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004)). This reliability inquiry is a flexible one, however, and "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir.2004). The relevancy of proposed expert testimony is "not simply in the way all testimony must be relevant [i.e. under Fed. R. Evid.

402] but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir.2003).

"[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.  As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight of the evidence rather than its admissibility, and should be left for the finder of fact - in this case, the jury. *U.S. v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty., Miss.*, 80 F.3d 1074, 1077 (5th Cir.1996) (internal citations omitted).

"To qualify as an expert, 'the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.'" *U.S. v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (quoting *U.S. v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992)).  Fed. R. Evid. 702 also states that  an expert may be qualified based on "knowledge, skill, experience, training, or education." *Hicks*, 389 F.3d at 524.  "'A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject.'" *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir.2009) (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)). "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Id*.

Defendants listed Liberato as a liability expert "to testify concerning practices and procedures for personnel basket transfers and expert opinions regarding the facts and

4

circumstances surrounding Plaintiff's accident."[4] Liberato is the president of the Billy Pugh Co., which Liberato asserts invented the offshore transfer net. In his statement of qualifications Liberato asserts that: he is a graduate of Texas Tech University in Lubbock, Texas; he is a member or associate member of various offshore industry groups or associations; he is currently vice chairman of the National Offshore Safety Advisory Committee and he has chaired or co-chaired several subcommittees on offshore operations; he has written, co-written or consulted on most of the guidelines currently in use for offshore transfer operations, including the Offshore Marine Safety Association, International Association of Drilling Contractors (ADC) U.S. Coast Guard Subchapter "N," Moxie Media Offshore training videos, Chevron's offshore transfer guidelines, BP offshore transfer guidelines, and others. He co-holds two patents for offshore transfer systems and has an additional patent pending on a new safety device for lifting. In his Motion in Limine to exclude the testimony of Liberato, Alford states that Liberato testified at his deposition that he has "ridden in the same type of personnel basket as was involved in this accident on approximately 30 past occasions."[5] By virtue of his knowledge with respect to the design, manufacture and use of personnel baskets for offshore transfers, it is this Court's opinion that Liberato is qualified to testify as an expert concerning practices and procedures for personnel basket transfers.

Accordingly, Liberato will be allowed to testify as an expert concerning practices and procedures for personnel basket transfers, including standard operating procedures for the

---

[4] *See* R. Doc. 84 at pp. 29-30 (Proposed Pretrial Order).

[5] R. Doc. 116.

use of personnel baskets, training videos for personnel basket use of which he has knowledge such as the Moxie Media training video, and the placement and use of tag lines attached to personnel baskets. Liberato also will be allowed to testify that, in his experience, there are "exceptionally few" injuries during offshore crane transfers and that such transfers are "extremely safe." Alford's concerns that such a general statement will be prejudicial or unhelpful do not fall on deaf ears, but the Court will leave the jury to make its own determinations as to the credibility of Liberato as a witness and assign the opinion testimony the weight it deserves.

With respect to Alford's concerns about Liberato's bias because Liberato's company manufactured the personnel basket being used by plaintiff when the accident occurred, Liberato's testimony will not be excluded for this reason alone. Issues of bias are better left for the jury to consider when weighing the credibility of a particular witness, and Alford will have the opportunity to address his concerns about Liberato's potential bias with a vigorous cross examination.

Based on Liberato's statement of his own qualifications, he does not have any expertise with respect to comparisons of the safety of helicopters as compared to personnel baskets for offshore transfers. Accordingly, Liberato will not be allowed to testify with respect to the Johns Hopkins report and his opinions on that report's significance for this case. That testimony is irrelevant and should be excluded. This case deals with the issue of the safety of a particular personnel basket, and any generalized comparison of the safety of personnel baskets to the safety of helicopters would confuse the issue and would not aid the jury in its role as trier of fact. *See* Fed. R. Evid. 702; *see also* Fed. R. Evid. 403. Likewise, Liberato has no basis for his opinion that "there would be accidents literally every

6

day" if a person fell every time a basket stopped or turned a few feet over the deck. As a result, this testimony is inadmissible as nothing more than speculation that will not aid the jury in its role as trier of fact, rendering it both unreliable and irrelevant. *Bocanegra*, 320 F.3d at 584. The same is true for Liberato's opinion that everyone on board a personnel basket would feel when "something [goes] wrong" and his implied opinion that if the crew of the rig or the boat did nothing wrong, Alford's injuries must have been his own fault. *Id*.

Accordingly, **IT IS ORDERED** that Alford's Motion in Limine be and hereby is **GRANTED IN PART** and **DENIED IN PART.**

New Orleans, Louisiana, this  15th  day of June, 2012.

                                                                                      _____
                                                                                        **SUSIE MORGAN**
                                                                    **UNITED STATES DISTRICT JUDGE**